IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:14-CR-51-FL-1
4:15-CV-104-FL

CECIL VANN GILBERT,                )
                                   )
        Petitioner,                )
                                   )
    v.                             )        **MEMORANDUM AND**
                                   )        **RECOMMENDATION**
UNITED STATES OF AMERICA,          )
                                   )
        Respondent.                )

This case comes before the court on the amended motion (D.E. 37) by pro se petitioner Cecil Vann Gilbert ("petitioner") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("§ 2255") and the motion (D.E. 39) by the government to dismiss petitioner's motion. These motions were referred to the undersigned magistrate judge for the conduct of an evidentiary hearing and issuance of a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rules 8(b) and 10 of the Rules Governing Section 2255 Proceedings ("§ 2255 Rules"). For the reasons and on the terms stated below, it will be recommended that the government's motion to dismiss be allowed and all of petitioner's claims be either dismissed pursuant to the government's motion or denied based on the evidence of record.

## BACKGROUND

## I.     PETITIONER'S CONVICTION AND SENTENCE

On 12 August 2014, petitioner was charged in a four-count indictment (D.E. 1) with three counts of knowingly and intentionally distributing a quantity of cocaine in May 2014, in violation of 21 U.S.C. § 841(a)(1) (counts 1, 2, 3), and knowingly and intentionally possessing with intent to distribute a quantity of cocaine, and aiding and abetting the same, in July 2014, in violation of

21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (count 4). Attorney Richard E. Rowe ("Rowe") entered his appearance as petitioner's appointed counsel on 20 August 2014. *See* Notice of Appear. of Rowe (D.E. 11); 19 Aug. 2014 Ord. Appoint. Counsel (D.E. 8).

On 16 October 2014, petitioner pleaded guilty, without a plea agreement, to all four counts of the indictment. Minute Entry dated 16 Oct. 2014 (D.E. 18). The presentence investigation report ("PSR") (D.E. 21), issued 22 December 2014, determined petitioner's guideline range under the 2014 United States Sentencing Guidelines Manual ("Guidelines") to be 151 to 188 months, reflecting a total offense level of 29 and criminal history category of VI.[1] PSR ¶¶ 24, 66, 68. Determination of this range was based, in part, on the finding that petitioner was a career offender pursuant to Guidelines § 4B1.1. *Id.* ¶ 24. This finding was grounded on two prior state felony convictions of petitioner for discharge of a weapon into an occupied property, one in 2000 and the other in 2010. *Id.* ¶¶ 14, 19.[2]

At sentencing on 6 January 2015 (*see* D.E. 25), the court adopted this guideline range without objection by either party. Tr. of Sent. Hrg. ("Sent. Tr.") (D.E. 55) 4:13 to 5:6; 9:2-9.[3] It sentenced petitioner to 188 months' imprisonment, the top of the range, and 3 years' supervised release. *Id.* at 9:2-9; J. (D.E. 27) 3-4. Rowe had requested a 151 months of imprisonment, the bottom of the range, on the rationale that petitioner was prepared to change his life (Sent. Tr. 6:2-7) and that the imposition of the career criminal enhancement would be particularly harsh in this

---

[1] According to information in the PSR, without the career offender enhancement, petitioner's total offense level would have been 17, criminal history category V, and guideline range 46 to 57 months. PSR ¶¶ 23, 62; Guidelines Sent. Table.

[2] The criteria for career offender status under the Guidelines are set out below in Applicable Legal Principles § III.

[3] Citations to page numbers in all documents in the record are those assigned by the court's CM/ECF electronic filing system.

case (*see* Pet'r's Sent. Mem. (D.E. 23) ¶¶ 3, 9). Petitioner himself requested mercy from the court. Sent. Tr. 6:9-15. Petitioner did not appeal his conviction or sentence.

## II.    THE § 2255 MOTION

Petitioner filed his original motion (D.E. 33; 37-1 (duplicate)) on 15 June 2015 on an outdated form. The court directed him to resubmit it on the proper form. *See* 16 June 2015 Ord. (D.E. 35). He filed his amended motion on 26 June 2015. Given petitioner's inclusion of his original § 2255 motion with exhibits as an attachment to his amended motion and the effective incorporation of the original motion into his amended motion (*see* Am. § 2255 Mot. 4, Ground One(a); 5, Ground Two(a)), the claims in the amended motion are the same as those in the original motion.

In his amended motion, executed under penalty of perjury (*id.* at 12), petitioner asserts three basic claims: (1) the court erred in applying the career offender enhancement to him (*id.* at, *e.g.*, 4, Ground One); (2) Rowe provided ineffective assistance of counsel by failing to adequately inquire into, adequately consult with petitioner about, and object to application of the career offender enhancement to him (*id.* at, *e.g.*, 5, Ground Two; 9 ¶ 13); and (3) Rowe also provided ineffective assistance of counsel by failing to appeal application of the career offender enhancement to him as petitioner instructed him to do (*id.* at, *e.g.*, 5, Ground Two(a) (referencing, *e.g.*, attached Orig. § 2255 Mot. (D.E. 37-1) 4 ¶ 11 (d))).

## III.    PROCEEDINGS ON THE § 2255 MOTION

On 6 August 2015, the government filed a motion (D.E. 39) to dismiss the claims in the amended motion except for the failure-to-follow-appeal-instruction claim, for which it acknowledged an evidentiary hearing was required. *See United States v. Tidd*, 582 F. App'x 242, 242 (4th Cir. 2014). The court scheduled the hearing and appointed counsel for petitioner for the

3

purpose of the hearing. 4 Dec. 2015 Ords. (D.E. 48, 49); *see also* Notice of Appear. of Damon John Chetson (D.E. 50). The hearing was held on 16 February 2016. *See* Minute Entry dated 16 Feb. 2016 (D.E. 58).

At the hearing, petitioner testified on his own behalf, and the government presented the testimony of Rowe. *See generally* Tr. of § 2255 Hrg. ("§ 2255 Tr.") (D.E. 61). The court admitted five exhibits offered by the government without objection from petitioner: (1) a letter from Rowe to petitioner dated 9 January 2015 (Gov.'s Ex. 1) (§ 2255 Tr. 37:8-13); (2) petitioner's amended § 2255 motion (Gov.'s Ex. 2) (§ 2255 Tr. 23:15-19); (3) a letter from Steven Horne ("Horne"), a consulting former federal probation officer from this district,[4] to Rowe dated 17 September 2014 (Gov.'s Ex. 3) (§ 2255 Tr. 34:25 to 35:4); (4) a handwritten note by Rowe dated 18 Nov. 2014 (Gov.'s Ex. 4) (§ 2255 Tr. 34:25 to 35:4); and (5) a handwritten note by Rowe dated 13 January 2015 (Gov.'s Ex. 5) (§ 2255 Tr. 41:18-22). *See* Ex. List for § 2255 Hrg. (D.E. 59).

The court granted the parties leave to file supplemental briefing, and each did. § 2255 Tr. at 59:18 to 60:14; Pet'r's Suppl. Mem. (D.E. 62); Gov.'s Resp. to Pet'r's Suppl. Mem. (D.E. 63).

**APPLICABLE LEGAL PRINCIPLES**

## I. STANDARD OF REVIEW FOR § 2255 MOTIONS

Pursuant to § 2255, a prisoner may seek correction or vacation of a sentence on the grounds that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). A § 2255 motion must be filed within one year from the latest of:

(1) the date on which the judgment of conviction becomes final;

---

[4] *See* § 2255 Tr. 30:7-12 (testimony by Rowe regarding Horne's background).

4

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

"[T]he burden of proof is on the petitioner to establish his [§ 2255] claim by a preponderance of the evidence. *Albarran-Rivera v. United States*, No. 7:10-CR-95-FL-3, 2013 WL 5570956, at *7 (E.D.N.C. 9 Oct. 2013) (citing *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958) ("Because the proceeding under 28 U.S.C. § 2255 is a civil collateral attack upon the judgment of conviction, the burden of proof is upon petitioner to establish [his claim] by a preponderance of evidence . . . .")). Generally, an evidentiary hearing is required under § 2255 "[u]nless it is clear from the pleadings, files, and records that the prisoner is not entitled to relief." *United States v. Rashaad*, 249 F. App'x 972, 973 (4th Cir. 2007) (citing *Raines v. United States*, 423 F.2d 526, 529 (4th Cir. 1970)).

## II. MOTIONS TO DISMISS UNDER RULE 12(b)(6) IN § 2255 PROCEEDINGS

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court may consider a motion to dismiss pursuant to Rule 12 (b)(6) challenging the legal sufficiency of a § 2255 motion. *See United States v. Reckmeyer*, No. 89-7598, 1990 WL 41044, at *4 (4th Cir. 2 Apr. 1990); Rule 12, § 2255 Rules (expressly permitting application of the Federal Civil Rules where "they are not inconsistent with any statutory provisions or these [§ 2255] rules"); Fed. R. Civ. P. 81(a)(4) (providing that the Federal Rules of Civil Procedure may be applied in § 2255

5

proceedings where a particular practice has not been specified by § 2255 and where such practice has "previously conformed to the practice in civil actions"); *see also Walker v. True*, 399 F.3d 315, 319 (4th Cir. 2005) (vacating district court's order allowing the government's motion to dismiss petitioner's motion under 28 U.S.C. § 2254 ("§ 2254")[5] because the district court did not properly apply the Rule 12(b)(6) standard when it failed to assume all facts pleaded by petitioner to be true and considered material not included in the petition).

A motion to dismiss should be granted only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). In analyzing a Rule 12(b)(6) motion, a court must accept as true all well-pleaded allegations of the challenged pleading. *Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (court must accept as true all factual allegations of the complaint). All reasonable factual inferences from the allegations must be drawn in plaintiff's favor. *Kolon Indus., Inc.*, 637 F.3d at 440 (citing *Nemet Chevrolet Ltd.*, 591 F.3d at 253). However, case law requires that the factual allegations create more than a mere possibility of misconduct. *Coleman v. Md. Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Iqbal*, 556 U.S. at 679). The allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Likewise, a pleading purporting to assert a claim is insufficient if it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]"

---

[5] The Federal Rules of Civil Procedure may also be applied to § 2254 motions. *See* Rule 12, Rules Governing § 2254 Proceedings; Fed. R. Civ. P. 81(a)(4).

6

devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal quotation marks omitted)).

## III.    CAREER OFFENDER ENHANCEMENT

Guidelines § 4B1.1 provides for a sentence enhancement for defendants qualifying as career offenders. It specifies that where, as here, the maximum statutory term of imprisonment is at least 20 years but less than 25 years, the base offense level is 32 and that the criminal history category is VI. Guidelines § 4B1.1(b), (b)(3).

Section 4B1.1(a) defines a career offender as follows:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a *crime of violence* or a controlled substance offense.

Guidelines § 4B1.1(a) (emphasis added).

Crime of violence, in turn, is defined in Guidelines § 4B1.2(a) as follows:

The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

*Id.* § 4B1.2(a). The initial clause, relating to force, is termed the force clause; the next clause, listing crimes various crimes including those involving explosives, is the enumeration clause; and the last clause, relating to risk of injury, is the residual clause. *Robbs v. United States*, No. 3:12-CR-188-FDW-21, 2017 WL 4225992, at \*2 (W.D.N.C. 21 Sept. 2017) (referencing 2013 Guidelines § 4B1.2(a), which is the same as in the 2014 Guidelines). As discussed further below,

it is petitioner's contention that his prior convictions for shooting into an occupied dwelling do not come within the residual clause that lies at the heart of his claim that the career offender enhancement does not apply to him.

## IV.    INEFFECTIVE ASSISTANCE OF COUNSEL

To state a claim of ineffective assistance of counsel, a petitioner must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). First, a petitioner must show that the representation he received fell below an objective standard of reasonableness. *Id.* at 688. The reviewing court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." *Id.* at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Further, "[a] petitioner seeking post-conviction relief bears a heavy burden to overcome this presumption, and the presumption is not overcome by conclusory allegations." *Hunter v. United States*, Civil No. 1:09cv472, Crim. No. 1:06cr251-3, 2010 WL 2696840, at *3 (W.D.N.C. 6 July 2010).

As to the second prong, a petitioner must show that he was prejudiced by the ineffective assistance. *Strickland*, 466 U.S. at 692. This prong is satisfied where there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The prejudice a defendant is required to show depends on the nature of the alleged ineffective assistance.

The *Strickland* test applies to claims that counsel was constitutionally ineffective for failing to follow the defendant's instruction to file a notice of appeal. Defense counsel has a duty to file an appeal if unequivocally instructed to do so by the defendant. *United States v. Poindexter*, 492 F.3d 263, 268 (4th Cir. 2007). "We have long held that a lawyer who disregards specific

8

instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id.* at 478 (citing *Rodriquez v. United States*, 395 U.S. 327 (1969)). "[A] defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice." *Id.* The prejudice prong of *Strickland* does not require a defendant to show that he or she would have been likely to prevail on appeal. *Peguero v. United States*, 526 U.S. 23, 28 (1999). "[W]hen counsel fails to file a requested appeal, a defendant is entitled to resentencing and to an appeal without showing that his appeal would likely have had merit." *Id.*

## V.    DETERMINING CREDIBILITY

In assessing the credibility of witnesses, trial courts consider "variations in demeanor and tone of voice." *Anderson v. City of Bessemer, N.C.*, 470 U.S. 564, 575 (1985). In addition, "[d]ocuments or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Id.*; *see also United States v. Marcavage*, 609 F.3d 264, 281 (3rd Cir. 2010) (applying factors in *Anderson* in holding that trial court's crediting of the government's evidence was error on the grounds that "[t]here are simply too many inconsistencies and gaps in the testimony of the government's witnesses, not to mention substantial contradictions between that testimony and other evidence in the record"). Additional considerations can include the witness's motive to lie and the level of detail in the witness's statements. *See, e.g., United States v. Wilson*, 624 F.3d 640, 665 (4th Cir. 2010).

## ANALYSIS

## I.    § 2255 HEARING TESTIMONY

### A.    Petitioner's Testimony

Petitioner testified as follows: Petitioner first met Rowe following his detention hearing. Tr. 5:16-21. Petitioner opted not to accept the plea agreement offered by the government and pleaded guilty to the charges against him without a plea agreement. *Id.* at 6:6-17. Petitioner met with Rowe regarding his potential sentence, and the meeting included a discussion about the career offender enhancement. *Id.* at 6:21 to 7:10. Petitioner asked Rowe how he met the definition of a career offender. *Id.* at 7:14-19. Petitioner asked Rowe if the PSR was accurate and was told that it was. *Id.* at 10:1-10.

At petitioner's sentencing hearing the court advised petitioner as to his right to appeal. *Id.* at 11:4-16. Immediately following sentencing, petitioner informed Rowe that he wanted to appeal. *Id.* at 11:16-21; 15:14-16. He said that Rowe told him he would look into it, but he never heard anything else from Rowe. *Id.* at 11:16 to 12:16. Petitioner understood that Rowe would be filing his appeal and is confident that he asked for an appeal. *Id.* at 12:17:21; 26:1-3. He never received a letter from Rowe after that conversation. *Id.* at 15:4-13; 19:19-20.

### B.    Rowe's Testimony

Rowe testified as follows:  He was appointed to represent petitioner and entered a notice of appearance in August of 2014. *Id.* at 29:5-11. Rowe met with petitioner more than once prior to petitioner's entry of a guilty plea and discussed with petitioner his possible sentencing range if he pleaded guilty. *Id.* at 29:18-24. Rowe consulted the Guidelines, petitioner's record, and Horne in reaching his estimation of petitioner's sentence and the applicability of the career offender

enhancement. *Id.* at 29:25 to 30:21. Rowe reviewed with petitioner Horne's recommendation, which were set out in Horne's 17 September 2014 letter to Rowe (Gov.'s Ex. 3). *Id.* at 31:19-25.

After petitioner entered his guilty plea, in October 2014, the Probation Office sent Rowe a draft PSR, issued 13 November 2014. *Id.* at 32:24 to 33:4; PSR 3. Rowe met with petitioner on 18 November 2014 to discuss the draft PSR, which included application of the career offender enhancement to petitioner. *Id.* at 33:5-10. Rowe wrote a note about the meeting, reading in relevant part: "Cecil said everything looked good - he had no objections. - it was what he expected - we had talked about 151-188 and that is what the PSR states is his guideline range -." *Id.* at 34:1-24; 18 Nov. 2014 Rowe Note (Gov.'s Ex. 4).

In his conversation with petitioner immediately after the sentencing on 6 January 2015, petitioner did not instruct Rowe to file a notice of appeal, but Rowe did agree to discuss the issue with petitioner later. *Id.* at 36:1-7. On 9 January 2015, Rowe sent petitioner a letter (Gov.'s Ex. 1) confirming that he had a right to appeal within 14 days of his sentencing and to contact Rowe's office in the event he wished to appeal. *Id.* at 36:21 to 37:7. Rowe did discuss appealing with petitioner when he met with him on 13 January 2015. *Id.* at 37:15 to 38:1. Rowe told petitioner that he did not think there was any issue to appeal, but if petitioner wanted him to, he would file one. *Id.* at 38:2-7. Rowe also told petitioner that he would consult with another lawyer at his firm, Tom Wilson ("Wilson"), to confirm his impressions, and petitioner agreed with this approach. *Id.* at 38:8-13. Rowe prepared a handwritten note on the meeting (Gov.'s Ex. 5). *Id.* at 40:18 to 41:2. Rowe did consult with Wilson, who concurred with Rowe's assessment. *Id.* at 39:12-23; 40:13-14. Rowe would have filed a notice of appeal had petitioner instructed him to do so. *Id.* at 38:18-20.

11

## II. CLAIM THAT COUNSEL FAILED TO FOLLOW PETITIONER'S INSTRUCTION TO APPEAL

The court finds that petitioner has failed to establish by a preponderance of the evidence that he unequivocally instructed Rowe to file an appeal. Fundamental to the court's conclusion is that it finds Rowe's testimony on the material factual issues to be credible and petitioner's contrary testimony not credible.

As to Rowe's testimony, it was matter-of-fact, not adversarial in tone. He evinced no hostility toward petitioner. His credibility is further supported by his substantial experience as a criminal defense attorney. He has been practicing law for 47 years and working on the appointed federal criminal cases being handled by his law firm for four and a half years. *Id.* at 27:15-16; 28:21 to 29:4. Rowe's law firm has handled a number of federal criminal appeals and filing a notice of appeal on petitioner's behalf would therefore not have been a difficult task for Rowe to accomplish. *Id.* at 38:18-25; 44:3-14.

The 9 January 2015 letter from Rowe to petitioner corroborates Rowe's testimony that petitioner did not request an appeal immediately after his sentencing hearing, as petitioner testified. In the letter, Rowe states, "should you wish to proceed with filing an appeal in this case, please notify my office immediately." 9 Jan. 2015 Ltr. from Rowe (Gov.'s Ex. 1). If petitioner had instructed Rowe to file an appeal on the day of sentencing, it would have made no sense for Rowe to send this letter inquiring about an interest in appeal just days after the sentencing.

In addition, Rowe's handwritten note on his 13 January 2015 meeting with petitioner further corroborates Rowe's testimony that he saw petitioner after the sentencing. As discussed, Rowe testified that he agreed to discuss the matter with Wilson after the meeting and would file an appeal only if Wilson thought there was merit. § 2255 Tr. 38:8-13; 39:9-11. The note on the meeting states in relevant part:

12

Meet with Cecil Gilbert re appeal - sentencing was last week. -

. . . .

I will talk to Tom W. - If he doesn't think there is a chance - - then don't file an
appeal. -

13 Jan. 2015 Rowe Note (Gov.'s Ex. 5).

Rowe's credible testimony about appealing discredits petitioner's testimony—that he
instructed Rowe to file an appeal immediately after sentencing and never saw Rowe again after
the date of sentencing. The credibility of this testimony by petitioner is, of course, also undercut
by Rowe's 9 January 2015 letter to petitioner (Gov.'s Ex. 1) and Rowe's note on his 13 January
2015 meeting with petitioner (Gov.'s Ex. 5).

Finally, although Rowe left the issue of whether to appeal open pending consultation with
Wilson, his testimony was credible that petitioner understood that no appeal would be filed unless
Wilson disagreed with his assessment. That no appeal was filed confirmed Wilson's concurrence.

Because petitioner has not shown by a preponderance of the evidence that he unequivocally
directed Rowe to file an appeal, he has failed to establish either deficient performance by Rowe or
prejudice under *Strickland* with respect to filing an appeal. This claim should accordingly be
denied.

## III. CLAIM THAT THE COURT ERRED IN APPLYING THE CAREER OFFENDER ENHANCEMENT TO HIM

Petitioner argues that the court erred in applying the career offender enhancement to him
because the two predicate felonies of discharge into an occupied property are not legally sufficient
to warrant application of the enhancement. The contention fails for several reasons.

As the Government points out, the Fourth Circuit in *United States v. Foote*, 784 F.3d 931,
932-33 (4th Cir. 2015) and *United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015), held that

a party's challenge to the applicability of the career offender enhancement is not cognizable in a §
2255 motion. *Holbrook v. United States*, No. CR ELH-10-0355, 2017 WL 4347832, at *2 (D. Md.
29 Sept. 2017) ("Of import here, 'a mistaken career offender designation is not cognizable on
collateral review.' *Newbold*, 791 F.3d at 459 (citing *United States v. Foote*, 784 F.3d 931, 932-33
(4th Cir. 2015)), *cert. denied*, __ U.S. __, 135 S. Ct. 2850, 192 L. Ed.2d 885 (2015)).").  This
caselaw therefore bars petitioner from contesting application of the career offender enhancement
to him.

  Even if petitioner's challenges to application of the career offender enhancement were
cognizable, they would fail.  For example, at the time petitioner was sentenced, Fourth Circuit
caselaw held that a comparable South Carolina conviction for discharge of a firearm at or into a
dwelling house regularly occupied by persons did meet the definition of crime of violence set forth
in § 4B1.2(a)(2).  *United States v. Ross*, 416 F. App'x 289, 291 (4th Cir. 2011).

  Further, petitioner contends that one of the two predicate convictions for discharge into an
occupied property—the one incurred in 2000 (*see* PSR ¶ 14)— cannot properly be counted because
he committed the crime when he was age 16.  While there is an express requirement in § 4B1.1(a)
that the defendant be at least 18 years old, that requirement applies to the offense for which the
defendant is being sentenced, not the predicate offenses.  The requirement reads "the defendant
was at least eighteen years old at the time the defendant committed the *instant offense of
conviction*."  Guidelines § 4B1.1(a)(1) (emphasis added).  The "instant offense of conviction"
obviously refers to the offense for which the defendant is being sentenced.  There is no dispute
that defendant, who was born in 1987, was at least 18 years of age when he committed the four
offenses to which he pleaded guilty in this case.

The application note to § 4B1.2 provides that a prior felony conviction must be an adult conviction to satisfy the definition of career offender. Guidelines § 4B1.2 Appl'n Note 1. It further provides that "[a] conviction for an offense committed prior to age eighteen is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted." *Id.*; *Winbush v. United States*, No. CR 2:10-00200, 2017 WL 1206008, at \*5 (S.D.W. Va. 31 Mar. 2017) (holding that "movant was treated as an adult for purposes of prosecution and that his prior conviction . . . qualifies as a prior violent felony offense under the career offender guideline"). While petitioner was only 16 years old at the time of the 2000 conviction, he was not treated as a juvenile, but was instead convicted as an adult in the Superior Court of Pitt County, North Carolina. *See* PSR ¶ 14; *see also* N.C. Gen. Stat. § 14-34.1 (defining the crime of discharging a weapon into occupied property); § 7B-1604(a) (providing that a juvenile who commits a criminal offense on or after his sixteenth birthday may be prosecuted as an adult). Thus, this conviction is classified as an adult conviction under the laws of the convicting jurisdiction. Petitioner's challenge to application of the career enhancement based on age therefore fails. *See United States v. Forte*, 629 F. App'x 488, 491 (4th Cir. 2015) (rejecting petitioner's contention that his conviction under North Carolina law, occurring when he was a juvenile but prosecuted as an adult, could not constitute a predicate offense supporting sentencing enhancement) (citing *United States v. Fonville*, 5 F.3d 781, 785 (4th Cir. 1993) (rejecting defendant's argument that the use of his prior North Carolina conviction, which accrued before he was 18 years old, violated principles of equal protection, and noting that Congress need not "prescribe a uniform age at which to consider criminals adults, for federal sentencing purposes, under state law to escape an equal protection challenge")); *United States v. Lender*, 985 F.2d 151, 156–57 & n.\* (4th Cir. 1993) (recognizing "that the prosecuting jurisdiction's determination of

whether an individual is prosecuted as a juvenile or an adult must be respected by later sentencing courts," and holding that such deference does not run afoul of the defendant's constitutional protections)).

In addition, assuming petitioner has not abandoned the argument, he contends that the career offender enhancement does not apply to him based on two decisions issued after he was sentenced: *United States v. Parral-Dominguez*, 794 F.3d 440 (4th Cir. 2015) and *United States v. Johnson*, __ U.S. __, 135 S. Ct. 2551 (2015). In *Parral-Dominguez*, an immigration case, the Fourth Circuit addressed Guidelines § 2L1.2(b)(A)(ii), which provides an enhancement for a defendant convicted of unlawfully entering or remaining in the United States if the defendant was previously deported or unlawfully remained in the United States after a conviction for a felony that is a crime of violence. Guidelines § 2L1.2(b)(1)(A)(ii). The definition of crime of violence as used in this section has two clauses: an enumeration clause listing certain offenses and a force clause covering "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 2L1.2 Appl'n Note 1(B)(iii). There is no residual clause. Except for the inclusion of local laws, the force clause in this definition is virtually identical to the force clause in the definition of crime of violence applicable to Guidelines § 4B1.1, as set out in Guidelines § 4B1.2(a)(1). Discharge of a weapon into an occupied property is not included in the enumeration clause in either definition. The court in *Parral-Dominguez* held that this offense did not come within the force clause and therefore does not qualify as a crime of violence under Guidelines § 2L1.2(b)(A)(ii). *Parral-Dominguez*, 794 F.3d at 445-46. Based on this holding, petitioner contends that the force clause in Guidelines § 4B1.1(a)(1) should not be deemed to include petitioner's convictions for discharge into an occupied property.

16

In *Johnson*, the Supreme Court addressed the residual clause in the definition of crime of violence in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), which, except for the inclusion any crime whether or not it is a federal or state offense, is the same as the residual clause in Guidelines § 4B1.2(a)(2): an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii); Guidelines § 4B1.2(a)(2). The Court invalidated the residual clause in the ACCA on grounds that it is unconstitutionally vague. 135 S. Ct. at 2551. "We hold that imposing an increased sentence under the residual clause of the [ACCA] violates the Constitution's guarantee of due process." *Id.* Based on *Johnson*, petitioner argues that the residual clause in Guidelines § 4B1.2(a)(2)[6] is also unlawful and therefore inapplicable to his two prior convictions for discharge into an occupied property. Because the force clause in Guidelines § 4B1.2(a) also purportedly does not apply to these convictions pursuant to *Parral-Dominguez* and discharge into an occupied property is not included in the enumeration clause of that section, petitioner argues that *Parral-Dominguez* and *Johnson*, taken together, exclude petitioner's prior two convictions for discharge into an occupied property from the definition of crime of violence in the career offender enhancement and make the enhancement inapplicable to him.

This argument, though, has been foreclosed by the recent Supreme Court decision in *Beckles v. United States*, __ U.S. __, 137 S. Ct. 886 (2017). There, the Court ruled that *Johnson* was not applicable to the residual clause in § 4B1.2(a)(2) because the due process concerns presented in the imposition of the residual clause in the ACCA were not present in a challenge to the advisory Guidelines, which "do not fix the permissible range of sentences" and instead "merely

---

[6] The court notes that the definition of crime of violence in the Guidelines was revised on 1 August 2016 to no longer contain a residual clause.

guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range." 137 S. Ct. at 892. The Court held that "the advisory Sentencing Guidelines are not subject to a vagueness challenge under the Due Process Clause and that § 4B1.2(a)'s residual clause is not void for vagueness." *Id.* at 895. Thus, irrespective of the status of the force clause in § 4B1.2(a)(1), petitioner's prior convictions for discharge into an occupied property fall within the definition of crime of violence for purposes of the career offender enhancement by virtue of the residual clause. The holding in *Beckles* thus defeats petitioner's argument that the career offender enhancement in § 4B1.2(a) applied to his sentence is invalid in light of *Johnson* and *Parral-Dominguez*. *See, e.g.*, *United States v. Hairston*, No. 4L06-CR-18, 2017 WL 4707345, at *1 (W.D. Va. 19 Oct. 2017 ) (holding that *Beckles* forecloses the argument that the residual clause in § 4B1.2(a) is void pursuant to *Johnson*); *Massey v. United States*, No. 3:13-CR-224-MOC-1, 2017 WL 4706910, at *6 (W.D.N.C. 19 Oct. 2017) (same); *Jackson v. United States*, No. CR ELH-12-0185, 2017 WL 4347852, at *2 (D. Md. 29 Sept. 2017) (same).

Petitioner makes the further argument that because of application of the career offender enhancement to him his sentencing was a "fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974). He points to the nearly 11-year disparity between the top of the enhanced guideline range to which he was sentenced, 188 months, and the top of the guideline range that would have applied without the career offender enhancement, 57 months. *See* PSR ¶¶ 23, 62; Guidelines Sent. Table; *supra* n.1. As discussed, however, even if petitioner's challenges to application of the career offender enhancement were considered on the merits, they fail. There accordingly was no error in application of the career offender enhancement to petitioner and his sentencing was therefore not

a "fundamental defect which inherently results in a complete miscarriage of justice." *Davis*, 417 U.S. at 346.

Petitioner has therefore failed to show that the court's application of the career offender enhancement to him was in any respect erroneous. The government's motion to dismiss should accordingly be allowed as to petitioner's claim that the court did err in applying the enhancement to him and the claim should be dismissed.

## IV. CLAIM THAT COUNSEL FAILED TO ADEQUATELY INQUIRE INTO, ADEQUATELY CONSULT WITH PETITIONER ABOUT, AND OBJECT TO APPLICATION OF THE CAREER OFFENDER ENHANCEMENT TO HIM

Turning first to the prejudice prong of *Strickland*, petitioner contends that he was prejudiced by Rowe's performance regarding inquiry into, consultation with him about, and nonobjection to application of the career offender enhancement to him because the enhancement did not properly apply to him. As discussed, however, the enhancement did properly apply to him. That was true under the law in effect at the time of sentencing, *see Ross*, 416 F. App'x at 291, as well as under the law as it has developed, *see*, *e.g.*, *Beckles*, 137 U.S. at 895. He therefore failed to show that the result of his sentencing would have been any different had Rowe not engaged in the allegedly deficient performance and thereby that he suffered any prejudice as a result of such performance. The government's motion to dismiss should accordingly be allowed as to this claim and it should be dismissed.

Alternatively, assuming without deciding that petitioner adequately pleaded deficient performance by Rowe in the areas at issue, he has failed to show by a preponderance of the evidence that such performance fell below an objective standard of reasonableness in satisfaction of the deficient performance prong of *Strickland*. This claim of ineffective assistance of counsel

is therefore subject to denial as to each of the areas of performance challenged based on the evidence of record.

As to the sufficiency of Rowe's inquiry into the applicability of the career offender enhancement to petitioner, it is true that Rowe himself had not conducted legal research on the enhancement. § 2255 Tr. 48:15 to 49:3; 49:21 to 51:10; 53:23 to 54:4; 57:22 to 58:3. However, he consulted with a former probation officer from this district, Horne, about the enhancement. *Id.* at 30:4-21; 45:11 to 48:5. While, as petitioner points out, Horne is not a lawyer, probation officers generally have specialized knowledge in the area of sentencing. Indeed, it is probation officers who prepare the presentence investigation reports upon which the district courts rely in deciding sentences.

Rowe also conferred with his firm colleague, Wilson, about appealing, albeit after sentencing. *Id.* at 39:12 to 40:14; 56:3-10. Wilson has brought many appeals in the Fourth Circuit. *Id.* at 44:3-11. Such conferral would seem necessarily to have included the applicability of the career offender status to petitioner. There was certainly no showing by petitioner to the contrary.

Petitioner argues that proper inquiry by Rowe into the applicability of the career offender enhancement to him would have enabled Rowe to develop the argument under *Parral-Dominguez* and *Johnson* that the enhancement did not properly apply to him. But counsel cannot properly be expected to anticipate every potential change in the law. *Warner v. United States*, No. 1:14CR81, 2017 WL 2377707, at *2 (N.D.W. Va. 1 June 2017) (holding counsel not ineffective for failing to object to career offender status where petitioner had two predicate offenses supporting court's decision); *United States v. McNamara*, 74 F.3d 514, 516 (4th Cir. 1996). Moreover, as discussed, the caselaw that was arguably the most directly on point supported application of the enhancement to petitioner. *See Ross*, 416 F. App'x at 291. For this and the other reasons stated, petitioner has

failed to show that Rowe's inquiry into the applicability of the career offender enhancement to him satisfied the deficient performance prong of *Strickland*.

As to consultation with petitioner, Rowe credibly testified that he consulted with petitioner about the applicability of the career offender enhancement. § 2255 Tr. 31:14-15; 32:5-17; 34:1-24. Petitioner himself testified that he met with Rowe to discuss his potential sentence and discussed his status as a career offender. *Id.* at 6:21 to 7:19. In addition, Rowe went over with petitioner the letter prepared by Horne that included the classification of petitioner as a career offender. *Id.* at 31:14-25.

Lastly, Rowe's not objecting to application of the career offender enhancement to him at sentencing was not deficient under *Strickland* because Rowe justifiably relied on Horne's opinion that application of the enhancement was proper and caselaw at the time supported application of the enhancement to petitioner, *see Ross*, 416 F. App'x at 291. And, again, with respect to petitioner's argument based on *Parral-Dominguez* and *Johnson*, Rowe cannot properly be expected to anticipate every potential change in the law. *Warner*, 2017 WL 2377707, at *2; *McNamara*, 74 F.3d at 516; *Britton v. United States*, No. 5:12CR14-02, 2017 WL 1410843, at *3-4 (W.D. Va. 19 Apr. 2017) (denying claim of ineffective assistance where no evidence that application of career offender was incorrect at time of sentencing and no error in failing to predict unforeseen changes in the law, particularly where *Beckles* ultimately does not provide any relief); *United States v. Entsminger*, 7:13CR42, 2017 WL 1293654, at *5 (W.D. Va. 6 Apr. 2017) (rejecting petitioner's claim that counsel was ineffective for failing to object to career offender status even where petitioner may have been given a different sentence based on later caselaw decided after the time of sentencing). With the failure of petitioner's claim that counsel did not adequately inquire into, adequately consult with petitioner about, and object to application of the

21

career offender enhancement to him, all of the claims alleged by petitioner in his § 2255 motion fail.

<h2 style="text-align:center">CONCLUSION</h2>

For the foregoing reasons, IT IS RECOMMENDED as follows:

1.  the government's motion (D.E. 39) to dismiss be ALLOWED;

2.  petitioner's claim that the court erred in applying the career offender enhancement be DISMISSED pursuant to the government's motion;

3.  petitioner's claim that his counsel failed to adequately inquire into, consult with him about, and object to application of the career offender enhancement to him be DISMISSED pursuant to the government's motion or, in the alternative, be DENIED based on the evidence of record; and

4.  petitioner's sole remaining claim that his counsel failed to file an appeal as instructed be DENIED based on the evidence of record.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 15 November 2017 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Any response to objections shall be filed within 14 days after the filing of the objections.

SO ORDERED, this 1st day of November 2017.

James E. Gates
United States Magistrate Judge